UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2446

SHEWANGIZAW AYELE WORKU,

Petitioner,

v.

LORETTA E. LYNCH, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  September 16, 2015          Decided:  October 20, 2015

Before KING, KEENAN, and FLOYD, Circuit Judges.

Petition for review denied by unpublished opinion.  Judge Keenan wrote the opinion, in which Judge King and Judge Floyd joined.

**ARGUED**: Jason Alexander Dzubow, DZUBOW & PILCHER, PLLC, Washington, D.C., for Petitioner.  Surell Brady, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF**: Stuart F. Delery, Assistant Attorney General, Civil Division, Cindy Ferrier, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENEN, Circuit Judge:

Shewangizaw Ayele Worku, a native and citizen of Ethiopia, petitions for review of a decision of the Board of Immigration Appeals (BIA) dismissing his appeal from an immigration judge's order denying his application for asylum.[1]  In his petition, Worku contends that the adverse credibility finding by the immigration judge (IJ) was not supported by substantial evidence, and, alternatively, that the testimony and affidavits of Worku's witnesses and his documentary evidence provided sufficient independent evidence to support his claim of past persecution.  Upon our consideration of these arguments, we deny Worku's petition for review, because the agency's determination is supported by substantial evidence.

## I.

Worku entered the United States in March 2006 after receiving a "temporary B-2 visitor visa," which authorized him and his family[2] to stay in the United States until September

---

[1] Worku also had sought withholding of removal and relief from removal under the Convention Against Torture.  However, the IJ denied that relief, and the BIA concluded that Worku had waived these claims.  Because Worku does not challenge the BIA's conclusion of waiver, we address only Worku's asylum request in the present case.

[2] Worku's wife and daughter sought asylum as derivative beneficiaries of Worku's application, see 8 U.S.C. § (Continued)

2006. In October 2006, Worku filed with the Department of Homeland Security (DHS) an application for asylum, claiming that he had been persecuted in Ethiopia because of his political opinions involving the Oromo National Congress (ONC)[3] and because of his Oromo ethnicity.

During an interview with a DHS asylum officer, Worku stated that he left Ethiopia after he had been arrested, detained, and tortured following an ONC demonstration. After reviewing the asylum officer's notes from that interview, Worku's written statement, and his supporting documents, DHS denied Worku's asylum request. DHS found that Worku's statements were not credible because he had provided insufficient details regarding the substance of his application, and because the documents he submitted did not supply clarifying facts. Based on Worku's continued presence in the United States beyond the period

_____

1158(b)(3)(A). They are not named parties in this petition for review.

[3] According to the State Department, Oromo is "Ethiopia's largest ethnic group, representing approximately 40% of the population." Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, Ethiopia Asylum Country Profile 4 (August 2007). Yet, although the ONC is a "prominent Oromo political organization[,] which won over 40 seats in the May 2005 elections[,] . . . ONC members were killed, jailed[,] and harassed both prior to, and following, the 2005 elections." Id.

3

authorized by his visa, DHS initiated removal proceedings against Worku under 8 U.S.C. § 1227(a)(1)(B).

In proceedings before the IJ, Worku conceded that he was removable but sought asylum on the ground that he had been persecuted based on his political opinion and his Oromo ethnicity. At a hearing, Worku testified that after he joined the ONC as a university student, he "attended meetings," "distributed printed materials describing what the government was doing to the Oromo people," and "campaigned" to encourage other students to join the group. Worku stated that during a student ONC demonstration on April 18, 2001, Ethiopian police officers fired gunshots, struck Worku in the head with a rifle, and arrested him. Worku testified that he was detained in a prison cell following this incident for a period of two weeks.

During Worku's detention, officers allegedly interrogated Worku about his Oromo ethnicity, his membership in the ONC, and his distribution of leaflets before the student demonstration. Worku stated that he was slapped, kicked, beaten severely with a baton, and forced to crawl on sharp pebbles for "sport." Worku was released on May 3, 2001, after allegedly signing a document stating that he would not participate in anti-government activities.

According to Worku, he was not permitted to return to the university, and he later observed two armed men following him

4

near his home. Fearing for his safety, Worku left Ethiopia and entered Israel, where he ultimately was denied aslyum.

At the same hearing before the IJ, Worku presented testimony and affidavits from his wife and three of his friends. He also submitted a written statement from his father. Worku additionally provided several documents purporting to support his claim, including a letter from an ONC official confirming Worku's ONC party membership and a letter from an Ethiopian government official stating that Worku is of Oromo ethnicity.

After the hearing, the IJ concluded that despite some general corroboration of Worku's testimony, Worku was not a credible witness. The IJ cited certain inconsistencies and omissions based on her comparison of Worku's hearing testimony with his earlier interview with the asylum officer. The IJ also noted her adverse perception of Worku's demeanor and his "non-responsive answers" during the hearing. The IJ therefore denied Worku's claim for asylum.

Worku appealed from the IJ's decision to the BIA, which vacated the IJ's decision and remanded the case for a determination whether other evidence adequately addressed the IJ's concerns regarding Worku's testimony about his detention and mistreatment. On remand, the IJ renewed her adverse credibility finding and explained that the affidavits and testimony of Worku's friends and relatives were not persuasive,

because those individuals were interested parties and their statements did not alleviate the IJ's concerns regarding Worku's demeanor and non-responsive answers. The IJ also explained that neither the witnesses' general statements nor the documentary evidence resolved some inconsistencies she found when comparing Worku's statement made to the asylum officer with his testimony regarding the details of his detention.

Worku again appealed to the BIA, which upheld the IJ's adverse credibility determination and dismissed the appeal. Worku filed a timely petition in this Court seeking review of the BIA's decision, pursuant to our jurisdiction under 8 U.S.C. § 1252(a)(1).

## II.

### A.

Because the BIA's decision relied on, and incorporated, some of the factual findings set forth in the IJ's decision, we review both decisions as necessary to address Worku's arguments. See Martinez v. Holder, 740 F.3d 902, 908 n.1 (4th Cir. 2014). We must uphold the agency's determination unless it is "manifestly contrary to the law and an abuse of discretion." Djadjou v. Holder, 662 F.3d 265, 273 (4th Cir. 2011) (citation omitted). "The agency abuses its discretion if it fails to offer a reasoned explanation for its decision, or if it distorts

6

or disregards important aspects of the applicant's claim." Id. (citation and internal quotation marks omitted).

## B.

Worku contends that the BIA erred in dismissing his appeal requesting asylum relief. He asserts that the IJ's adverse credibility finding was not supported by substantial evidence. According to Worku, the alleged inconsistencies on which the IJ relied were not actual discrepancies but were clarifications of Worku's previous statements. Worku also argues that the statements and testimony of his friends and relatives, and the documentary evidence submitted, independently supported his claim of past persecution. We disagree with Worku's position.

Under 8 U.S.C. § 1158(b), the Attorney General has discretion to admit into the United States an asylum applicant if the applicant first establishes that he is a "refugee." A "refugee" is defined as a person who is "unable or unwilling" to return to his native country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42) (emphasis added).

When an applicant establishes that he has suffered past persecution, a rebuttable presumption arises that he has the requisite level of fear of persecution. See 8 C.F.R. § 208.13(b)(1). If the applicant cannot establish past

7

persecution, he must prove both the subjective and objective components of fear of persecution, namely, "that the applicant is subjectively afraid and that the fear is objectively well-founded." Camara v. Ashcroft, 378 F.3d 361, 367 (4th Cir. 2004) (emphasis omitted).

An applicant's testimony alone may satisfy this burden, but only when that testimony is credible, persuasive, and refers to specific evidence demonstrating that the applicant qualifies as a refugee. 8 U.S.C. § 1158(b)(1)(B)(ii). "[A] determination that the applicant's testimony is not credible will generally defeat" a claim for relief from removal, Camara, 378 F.3d at 369, unless the applicant can establish his eligibility with evidence that is independent of the discredited testimony, see Tassi v. Holder, 660 F.3d 710, 725-26 (4th Cir. 2011).

Our review of an agency's adverse credibility determination is "narrow and deferential," and is limited to our consideration whether that determination is supported by "substantial evidence." Djadjou, 662 F.3d at 273; Hui Pan v. Holder, 737 F.3d 921, 926 (4th Cir. 2012). Under this standard, we will reverse the agency's decision only when a "reasonable adjudicator would be compelled" to reach a different result. Hui Pan, 737 F.3d at 926.

After reviewing the record, we conclude that substantial evidence supports the agency's adverse credibility

8

determination. The IJ and the BIA identified several differences between the statements Worku made to the asylum officer and his hearing testimony concerning the events surrounding his arrest and two-week detention. Those differences included the fact that Worku had testified that he had distributed ONC leaflets, but had failed to inform the asylum officer about this particular conduct. Worku also provided inconsistent statements regarding the number of times he was interrogated, the number of people in the room when he was interrogated, and the time period during his detention when he was forced to crawl on gravel. Although a reasonable factfinder could categorize these factual differences as minor discrepancies, the differences are not so insignificant as to compel us to conclude that Worku was credible.

Further supporting the adverse credibility finding was the IJ's observation that Worku was not responsive to certain questions, and that he appeared to testify from a "script." We accord substantial deference to this finding based on the IJ's unique role in observing Worku's demeanor, a critical factor in evaluating truthfulness. See Huang v. Holder, 744 F.3d 1149, 1153 (9th Cir. 2014) (noting that the "need for deference is particularly strong in the context of demeanor assessments" because such determinations often will be "based on non-verbal cues" that rarely "can be conveyed by a paper record of the

9

proceedings"). We therefore conclude that the IJ's assessment regarding Worku's demeanor, together with the various discrepancies evident from a comparison of Worku's statement before the asylum officer and his hearing testimony, constitute substantial evidence to support the adverse credibility determination. See Hui Pan, 737 F.3d at 926.

We also conclude that the BIA correctly determined that the other evidence presented by Worku did not overcome the adverse credibility finding regarding his claim of past persecution. The testimony and statements from Worku's friends and relatives confirmed only that Worku was an ONC member, that he was arrested during student demonstrations in April 2001, that he returned home from the demonstrations with visible injuries, and that he fled Ethiopia. This evidence does not directly corroborate the allegation that Worku was persecuted because of his political opinions or because of his Oromo ethnicity. Furthermore, the BIA correctly concluded that because this evidence came from friends and relatives of Worku who were personally interested in the outcome of Worku's claim, such evidence properly was accorded less weight. See Gandziami-Mickhou v. Gonzales, 445 F.3d 351, 358-59 (4th Cir. 2006) (noting that petitioner's proffered documents were not "independent evidence" of past persecution because the affidavits were from interested friends and family).

10

We also observe that the documentary evidence presented by Worku did not directly link his alleged mistreatment to his membership in the ONC or to his Oromo ethnicity. Instead, the documents showed only that Worku had belonged to the ONC, that some ONC members had been persecuted in the past, and that Worku had sustained bodily injuries consistent with his self-reported torture. We therefore conclude that the record independent of Worku's testimony was insufficient to overcome Worku's adverse credibility determination, and that Worku failed to prove his claim of past persecution on account of his political beliefs, his membership in a social group, or his race. See Camara, 378 F.3d at 370; Gandziami-Mickhou, 445 F.3d at 358-59.

## III.

For these reasons, we deny Worku's petition for review of the BIA's decision upholding the denial of his application for asylum.

PETITION FOR REVIEW DENIED

11